UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|     PLAINTIFF, | : | CRIMINAL ACTION NO. |
| | : | 3:07-cv-1088 (JCH) |
| v. | : | |
| | : | |
| MATTHEW EVANS, ET AL | : | |
|     DEFENDANTS. | : | FEBRUARY 24, 2009 |
| | : | |

**RULING RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(DOC NO. 62)**

**I.    INTRODUCTION**

Plaintiff, United States of America, moves for partial summary judgment against defendants, Matthew and Laura Evans.  Specifically, the government seeks a monetary judgment against Matthew Evans, in his individual capacity, in the amount of $503,421.16, plus statutory additions and interests according to law, pursuant to assessments made by the Internal Revenue Service.  Additionally, the government seeks a monetary judgment against Mr. and Mrs. Evans in the amount of $165,465.64, plus statutory additions and interests according to law, pursuant to assessments made by the Internal Revenue Service.  The Evans oppose the Motion, arguing that issues of material fact exist.

For the following reasons, the court DENIES in part and GRANTS in part the Motion for Partial Summary Judgment.

1

**II.    FACTS**

        A.    Matthew Evans Individually

During the relevant tax periods, Matthew Evans owned and operated a house painting business. Aff. Matthew Evans Indiv. ¶ 2.[1] Evans did not do the painting himself; instead he subcontracted jobs to others. Id. ¶ 3. During the tax period ending December 31, 1995, this business was known as Henniker Enterprises, Inc. On March 8, 1999, pursuant to 26 U.S.C. § 6672,[2] a delegate of the Secretary of the Treasury made an assessment against Matthew Evans as the person responsible for Henniker Enterprises. The assessment concluded that Matthew Evans willfully failed to collect, or truthfully account for and pay over, income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of employees of Henniker Enterprises for the tax period ending December 31, 1995. The government also claims that Matthew Evans failed to pay backup withholding taxes for reportable payments to independent contractors pursuant to 26 U.S.C. §3406. Pl.'s Rep. at 2.

Similarly for the 1997 and 1998 tax years, the house painting business was known as North Pasture, LLC. As the person responsible for North Pasture, an

---

[1] Mr. Evans submitted two affidavits as part of his Opposition. One regards the assessments related to Mr. and Mrs. Evans and another regards the assessments made against Mr. Evans in his individual capacity as the person responsible for his painting business. In an effort to distinguish the two, the court will refer to the latter as "Aff. Matthew Evans Indiv."

[2] Section 6672 provides in pertinent part:

(a) General Rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over.

2

assessment was made in 2002 against Matthew Evans claiming that he willfully failed to collect, or truthfully account for and pay over, income and FICA taxes withheld from the wages of some or all employees of North Pasture, LLC in the 1997 and 1998 tax periods, respectively.  As the person responsible, the government claims that he also failed to pay backup withholding taxes pursuant to section 3406 of the Internal Revenue Code.  In total, the assessment indicated that Evans owed $8,002.08 for the 1997 tax year, and $142,301.58 for the 1998 tax year.  The government also claims that Matthew Evans has failed, neglected, or refused to fully pay the assessed liabilities for the tax years 1999 through 2004.

In all, the total amount assessed against Matthew Evans in his individual capacity, according to the government, is $503,421.16, plus statutory additions and interest.

      B.     Matthew and Laura Evans

A delegate of the Secretary of Treasury made income tax assessments totaling $165,359.64 against Matthew and Laura Evans for the 1994 through 1998 tax periods.  Notice of these assessments and demand for payment was made upon Matthew and Laura Evans around the time the assessments were made.  Matthew and Laura Evans have not paid these assessments.

Laura Evans is a stay-at-home mom who is primarily involved in the care and upbringing of Erica Evans, Matthew and Laura's daughter.  Def.'s Mem. in Supp. at 1.  Erica is significantly disabled.  Id. at 2.  Matthew and Laura Evans claim that the tax assessments do not reflect the extensive medical expenses, and if they did, it would substantially reduce the liability they incurred during the relevant tax years.  Aff.

Matthew Evans ¶ 4,5, & 7.

## II.  STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

"In the context of a section 6672(a) dispute . . . summary judgment is appropriate where there are no genuine questions as to the assessed individual's control of company funds and decision making authority, his or her knowledge of the deflection of company funds to payees other than the IRS, or the existence or reasonableness of his

4

or her belief that the taxes were, in fact, being paid." Winter v. United States, 196 F.3d 339, 346 (2d Cir. 1999).

## III. DISCUSSION

### A. Matthew Evans Individually

The Internal Revenue Code (the "Code") requires employers to deduct social security and income taxes from the wages paid to employees. 26 U.S.C. § 3402. "The deducted amounts which are withheld from the paychecks are held by the employer as a special trust fund for the benefit of the United States and must be paid to the government on a quarterly basis." Carter v. United States, 717 F.Supp. 188, 191 (S.D.N.Y. 1989)(internal citations omitted). The Code also requires employers to pay backup withholding taxes for reportable payments to independent contractors. 26 U.S.C. § 3406. Section 6672 provides the government with a means to collect withheld taxes in the event that they are not paid. Pursuant to this section, the government may assess a penalty, equal to the full amount of the unpaid tax, against a person who willfully failed to collect or pay the tax. 26 U.S.C. § 6672(a).

A tax assessment made pursuant to section 6672 is entitled to a presumption of correctness. United States v. McCombs, 30 F.3d 310, 318 (2d Cir. 1994)(citing United States v. Janis, 428 U.S. 433 (1976)). With respect to a section 6672 penalty, "courts have extended the presumption of correctness not merely to the amount of the assessment itself but also to the existence of the two elements . . . that underlie the imposition of this type of tax liability." Id. "Under this section, a party may be held liable for unpaid withholding taxes if: first, he is the 'responsible person' for collection and payment of the employer's taxes, and second, he 'willfully' failed to comply with the

5

statute." United States v. Fiataruolo, 8 F.3d 930, 938 (2d Cir. 1993)(internal citations omitted); see also 26 U.S.C. § 6672.  A taxpayer who wishes to challenge the validity of the assessment bears the burdens of proving by a preponderance of the evidence that one or both of the elements of liability under that section is absent.  Lesser v. United States, 368 F.2d 306, 310 (2d Cir. 1996).

Evans does not contest that he was a responsible person for Henniker Enterprises and North Pasture, LLC.  Thus, the government has proved this element.  The government must also demonstrate that Mr. Evans acted willfully.  In order to satisfy the willfulness requirement:

> "a responsible person need not act out of an evil motive or an intent to defraud.  Instead, the principal component of willfulness is knowledge: a responsible person acted willfully within the meaning of § 6672(a) if he (a) knew of the company's obligation to pay withholding taxes, and (b) knew that company funds were being used for other purposes instead.  Thus, failures are willful within the meaning of section 6672(a) if they are voluntary, conscious and intentional--as opposed to accidental--decisions not to remit funds properly withheld to the Government."

Winter, 196 F.3d at 345 (internal citations and quotation marks omitted).

The government claims that, as an employer, Mr. Evans was required to provide subcontractors with Forms 1099 and that he failed to do this.  It further claims that he also failed to initiate backup withholdings as required by law.  It claims that the backup withholdings are the overwhelming amount at issue with respect to Mr. Evans' individual liabilities.  See Pl.'s Rep. at 3 (Doc. No. 73).  The government provided a chart for the tax periods related to Henniker Enterprises and North Pasture.  It breaks down the amounts owed related to the employment tax and the back up withholding. The chart is depicted as follows:

| Tax Period | Entity Name | Employment Tax Component | Backup Withholding Component | Total § 6672 Penalty |
|---|---|---|---|---|
| December 31, 1995 | Henniker Enterprises | $11,271.38 | $52,209.58 | $63,480.96 |
| December 31, 1997 | North Pasture, LLC | $0.00 | $7,950.08 | $7,950.08 |
| December 31, 1998 | North Pasture, LLC | $1,758.56 | $140,541.00 | $142,299.56 |

Mr. Evans does not dispute the government's calculations. Instead, he disputes what the numbers are predicated on, namely the fact that he did not issue 1099s and did not obtain his subcontractors tax identification numbers ("TINs"). Instead, Mr. Evans claims that he did obtain TINs and did issue Form 1099s to his subcontractors as required by law. Aff. Matthew Evans Indiv. ¶ 6. Mr. Evans' only evidence that he provided the 1099s is his Affidavit. He claims that his subcontractors would give him their TINs and social security numbers, and he would then pass those numbers on to his accountant, who would prepare the 1099s. Aff. Matthew Evans in Supp. of Surreply ¶ 7. Each year, his accountant would prepare the Form 1099s for each independent contractor and report all income earned. See, e.g., id. ¶ 9.

The government argues that, during the calendar year ending December 31, 1997, North Pasture, LLC failed to issue Form 1099s for ten independent contractors, and, during the 1998 calendar year, it failed to issue Form 1099s for all of their independent contractors. See Pl.'s Rep. to Surreply at Exh 2. At the time of the

assessment, there was no evidence of the TINs or 1099s. Id. Thus, though Evans suggests he provided the TINs to the accountant, these TINs were not available to the auditor when calculating the assessments, and there is no evidence of the TINs in the record, other than Evans' Affidavit.

Evans admits that he never withheld taxes from independent contractors as he did not believe he had any obligation to do. See Aff. Matthew Evans in Supp. of Surreply ¶ 11-12. Evans also argues that the government was required to give him notice to begin backup withholdings for each individual independent contractor. See Def.'s Surreply at 4 (Doc. No. 82). In support, he cites section 3406 of the Code.

The government contends that, because Mr. Evans failed to furnish the TINs of the independent contractors, notice of backup withholdings was not required. Because Mr. Evans operated a house painting business and paid independent contractors to perform these services, he was required to file returns detailing any payments to any subcontractor for services rendered totaling $600 or more in a calendar year. 26 U.S.C. §6041A (returns required if "any service-recipient engaged in a trade or business pays in the course of such trade or business during any calendar year remuneration to any person for services performed by such person, and the aggregate of such remuneration paid to such person during such calendar year is $600 or more.") Section 3406 of the Code, which governs backup withholdings, states that in the case of any reportable payment, "if the payee fails to furnish his TIN to the payor in the manner required, then the payor shall deduct and withhold from such payment a tax equal to" 31 percent of such payment. 26 U.S.C. § 3406(a)(1)(A); see also Pl.'s Rep. to Surreply at Exh 2. Thus, the government is correct in stating that, if the TINs were not obtained, then

notice was not required and Mr. Evans was required to deduct backup withholdings from the payments made to the subcontractors.

The issue, in deciding summary judgment, turns on whether the TINs were ever furnished to Mr. Evans and whether he ever issued Forms 1099 to his subcontractors. If the TINs were furnished, then the requirement to secure backup withholdings would not be triggered. However, if they were not furnished,[3] backup withholdings were required. On the one hand, Mr. Evans' Affidavit states that he received the TINs and social security numbers from all of his subcontractors, and he then passed them on to his accountant to prepare the Form 1099s.[4] Aff. Matthew Evans in Supp. of Surreply ¶ 7. Mr. Evans has not supplied copies of the Form 1099s or the TINs to the auditor or to the court. On the other hand, there is evidence from the IRS that, when the audits were conducted, in the Fall of 2002, no Form 1099s nor TINs were provided to the auditor.

All of this goes to Matthew Evans' willfulness, which is normally a question of fact. Winter, 196 F.3d at 347. "Therefore, a court may determine a party's willfulness as a matter of law only when the facts are undisputed and application of the law to those facts will reasonably support only one ultimate conclusion." Id. (citing Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 437-38 (2d Cir. 1999)). In fact, "this Circuit recognizes a so-called 'reasonable cause' exception to section 6672(a) liability: [A] responsible person's failure to cause the withholding taxes to be paid is not willful if he [or she] believed that the taxes were in fact being paid, so long as that belief

---

[3] During oral argument, it was suggested that the numbers provided to Mr. Evans were potentially fake though he was unaware of that. Neither of his affidavits suggest that he was aware that fake TINs were supplied to him.

[4] There is no affidavit from this accountant attesting to the same.

was, in the circumstances, a reasonable one.'" Winter, 196 F.3d at 345 (quoting, United States v. Rem, 38 F.3d 634, 643 (2d Cir. 1994)). A genuine issue of fact exists: if Mr. Evans can prove that the TINs were furnished to him,[5] and the 1099s were prepared, or that he had a "reasonable belief" that the taxes were being paid, his conduct cannot be deemed willful. This issue turns on Mr. Evans' credibility and "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." Rem, 38 F.3d at 644 (reversing summary judgment because the debtor demonstrated, largely by way of affidavits and deposition testimony, that there were genuine issues of fact for trial). Accordingly, because an issue of fact remains, the court must DENY summary judgment with respect to the assessments against Matthew Evans in his individual capacity.

      B.    Matthew and Laura Evans

With respect to the assessment against Matthew and Laura Evans, as with the assessment against Matthew Evans individually, the assessments are entitled to a presumption of correctness. Accordingly, Mr. and Mrs. Evans bear the burdens of proving by a preponderance of evidence that the assessments were incorrect. In his affidavit, Mr. Evans represents that a "substantial part" of his income is devoted to paying medical expenses for his daughter who suffers from severe emotional and physical disabilities. Matthew Evans Aff. ¶ 2-4. He alleges that those medical expenses are not accurately set forth in their income tax returns. Id. ¶ 5-7. Though in his Affidavit he claims that he is going to review his records to determine the exact

---

[5] Or if fake, he did not know they were fake.

amount, id. at ¶ 6, Mr. Evans offers no supplemental evidence, such as medical documentation or amended returns, to support this claim.[6] Because Matthew and Laura Evans have not "set forth specific facts showing that there is a genuine issue for trial", Anderson, 477 U.S. at 255, they have not met their burden to defeat summary judgment.[7] Accordingly, the court GRANTS the motion for partial summary judgment with respect to the assessments made against Matthew and Laura Evans in the amount of $165,465.64.

## IV.    CONCLUSION

For the foregoing reasons, the court DENIES in part and GRANTS in part the government's Motion for Partial Summary Judgment (Doc. No. 62). Accordingly, the court ORDERS that, when judgment enters in this case,[8] that it enter against Matthew and Laura Evans, and in favor of the United States of America, in the amount of $165,359.64, plus statutory additions and interests according to law, as to Count One.

A calendar for a bench trial regarding the assessments as to Mr. Evans, in his individual capacity as the person responsible for his house painting business, will issue shortly. The only issue remaining, in this court's view, is Mr. Evans' "willfulness", i.e., did Mr. Evans receive TINs from, and did he issue 1099s to, his subcontractors. A Pretrial Order will issue. Compliance with the Pretrial Order will be strictly enforced.

---

[6] During oral argument, the Evans' attorney represented that he has not received any supporting documentation from the Evans with regard to their medical expenses, nor have they filed amended returns.

[7] It bears noting that Evans' attorney conceded this point during oral argument.

[8] Under Fed. R. Civ. P. 54, no partial judgment can enter at this time. If the plaintiff seeks entry immediately on Count One, it may move for the same.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 24th day of February, 2009.

                                          /s/ Janet C. Hall  
                                          Janet C. Hall  
                                          United States District Judge